# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VELMA LAPLANT,** | : | **No. 3:06cv2246** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **WELBILT WALK-INS, LP t/a KYSOR** | : | |
| **PANEL SYSTEMS, PROFESSIONAL** | : | |
| **INSTALLATIONS, AND CLEVELAND** | : | |
| **CONSTRUCTION, INC.** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are motions in limine filed by the parties to this case.  Having been fully briefed, the matters are ripe for disposition.

## Background

This case arises from Plaintiff Velma Laplant's slip and fall while working in the Millford, PA Walmart deli freezer on March 3, 2006.  Plaintiff, who Walmart employed as a "deli associate," alleges that an accumulation of ice inside the door threshold of the deli freezer caused her to fall, leading to serious injuries.  Plaintiff alleges, under theories of strict liability and breach of warranty, that Defendant Welbilt Walk-ins, LP t/a Kysor Panel Systems (hereinafter "Defendant Welbilt") is liable for defectively designing the freezer door so as to contribute to the icy conditions that caused her fall.  Additionally, Plaintiff claims that Defendant

Cleveland Construction, Inc. (hereinafter "Defendant Cleveland") negligently constructed and inspected the cement floor and drainage system surrounding the deli freezer.

After the court granted in part and denied in part Defendant Welbilt's motion for summary judgment, the parties filed motions in limine in anticipation of the pre-trial conference.  The parties then briefed the issues, bringing the case to its present posture.

**Jurisdiction**

This court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332.  Plaintiff is a citizen of Pennsylvania.  Defendants are business entities with citizenships and principal places of business in other states.  The amount in controversy exceeds $75,000.  The substantive law of Pennsylvania shall apply because the court is sitting in diversity.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Discussion**

Plaintiff has filed one motion in limine to seek the admission of evidence of a subsequent remedial measure.  (Doc. 96).  Defendant Cleveland has filed two motions in limine (Docs. 90 and 93) – the former to preclude Plaintiff's proposed expert, Robert J. Illo, and the latter to preclude Defendant's proposed expert, Kenneth L. Fry.  Defendant Welbilt filed one motion in limine to preclude a portion of Plaintiff's proposed expert's testimony.  (Doc. 98).  The court will address each

2

motion in turn.

### A. Plaintiffs' Motion

In her motion in limine, Plaintiff seeks the introduction of evidence of the installation of a "diamond plate" to the threshold of the deli freezer door. (Pl.'s Mot. in Limine (Doc. 96) at ¶ 17). Plaintiff contends that subsequent to the accident, ABC Refrigeration, a Walmart vendor, installed the diamond plate to the threshold of the freezer door. (Id. at 5, 18). This diamond plate serves to raise the level of the threshold of the freezer door. (Id. at 6). This plate has successfully stemmed the flow of water into the deli freezer. (Id. at 7).

Federal Rule of Evidence 407 typically prohibits the admission of subsequent remedial measures "to prove negligence, culpabale conduct, a defect in a product, or a need for a warning or instruction." However, Rule 407 and its policy underpinnings are not implicated when the subsequent remedial measure is undertaken by a non-party to the action. See Diehl v. Blaw-Knox, 360 F.3d 426, 430 (3d Cir. 2004) ("[Rule 407] is not implicated where the evidence concerns remedial measures taken by an individual or entity that is not a party to the lawsuit").

No party opposes Plaintiff's motion in limine. Additionally, it appears that ABC Refrigeration will no longer be a party to this action at trial. Therefore, the court will grant Plaintiff's unopposed motion to permit the admission of evidence of the diamond plate installation.

**B. Defendants' Motions**

Defendant Cleveland has filed two motions in limine seeking to preclude the testimony of Plaintiff's proposed expert witness, Robert J. Illo and Defendant Welbilt's proposed expert witness, Kenneth L. Fry.  (Docs. 90, 93).  Defedant Welbilt has also filed a motion in limine to preclude a portion of Illo's testimony.  (Doc. 98).  All three motions contend that the proposed expert witnesses fail to meet the standards of Federal Rule of Evidence 702.  For the foregoing reasons, the court will deny all three of Defendants' motions in limine.

### i. Standard of Review for Expert Testimony

Federal Rule of Evidence 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  FED. R. EVID. 702.  Courts have described the function of the district court in determining whether to admit expert testimony as a "gatekeeping" one.  The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993).  Thus, "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience,

4

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in a particular field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).  There are three major requirements of a Rule 702 analysis of proposed expert testimony: "'(1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, *i.e.,* reliability]; and (3) the expert's testimony must assist the trier of fact [, *i.e.*, fit].'" United States v. Schiff, 602 F.3d 152, 172 (3D Cir. 2010) (quoting Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008)).

First, in deciding whether an expert is qualified, courts are required to assess whether the expert has specialized knowledge in his or her testimony, which may be based in practical experience as well as academic training and credentials.  See Elcock v. Kmart Corp., 733 F.3d 734, 741 (3d Cir. 2000).  The specialized knowledge requirement has been interpreted liberally in the substantive as well as the formal qualification of experts; "'at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman . . . .'" Id. (quoting Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir.1998)).

Second, courts are charged with assessing the techniques and methodologies employed by the expert when determining the reliability of his proposed opinion.  To qualify as reliable under Rule 407, the "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 742 (3d Cir. 1994),

5

cert. denied, 513 U.S. 1190 (1995) ("Paoli II"), (quoting Daubert, 509 U.S. at 590).

Essentially, "an expert opinion must be based on reliable methodology and must

reliably flow from that methodology and the facts at issue – but it need not be so

persuasive as to meet a party's burden of proof or even necessarily its burden of

production."  Heller v. Shaw Indus., Inc., 167 F.3d 146, 152 (3d Cir. 1999).

Furthermore, district courts are not tasked with determining the correctness of a

proposed witness' opinion.  Paoli II, 35 F.3d at 744 ("The grounds for the expert's

opinion merely have to be good, they do not have to be perfect.").  As the Third

Circuit Court of Appeals has noted:

> A judge frequently should find an expert's methodology helpful even
> when the judge thinks that the expert's technique has flaws sufficient to
> render the conclusions inaccurate.  He or she will often still believe that
> hearing the expert's testimony and assessing its flaws was an important
> part of assessing what conclusion was correct and may certainly still
> believe that a jury attempting to reach an accurate result should
> consider the evidence.

Id. at 744-45.

Third, Rule 702 requires that courts make a determination as to the "fit" of the

expert testimony.  Courts ask "'whether [the] expert testimony proffered . . . is

sufficiently tied to the facts of the case that it will aid the jury in resolving a factual

dispute'" when assessing the fit of expert testimony.   Daubert, 509 U.S. at 591

(quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)).

"Admissibility thus depends in part upon 'the proffered connection between the

scientific research or test result to be presented and particular disputed factual

issues in the case.'" <u>Oddi v. Ford Motor Co.</u>, 234 F.3d 136, 145 (3d Cir. 2000) (quoting <u>Paoli II</u>, 35 F.3d at 743).

While this court may admit a somewhat broader range of scientific testimony than was allowed pre-Daubert, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit*[1] of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." <u>General Electric v. Joiner</u>, 522 U.S. 136, 146 (1997).  But ultimately, the trial court is granted leeway when it determines how to evaluate expert testimony before trial, just as it enjoys in an ultimate ruling on the case.  <u>Id.</u> at 143 (appellate courts are to apply "abuse of discretion" standard when reviewing district court's reliability determination).

### ii.  Defendant Cleveland's Challenge of Robert J. Illo

Defendant Cleveland seeks to exclude the testimony of Plaintiff's proposed liability expert, Robert J. Illo, in its entirety.  (Def. Cleveland's Mot. in Limine (Doc.90)).  Defendant Cleveland contends that Illo's opinion does not reasonably flow from the methodology that he employed and the facts in issue.  Specifically, Defendant Cleveland points to Illo's observations and the conclusion he drew from

---

[1] *Ipse dixit* is defined as: "Something asserted but not proved," from Latin, "he himself said it."  Black's Law Dictionary (8th ed. 2004).

these observations.  In relevant part Illo's report states:

> 2.8 Height of Delicatessen Department Floor Relative to the Freezer:
> The height of the delicatessen floor varies to the height of the floor in
> the freezer by on-sixteenth (1/16) to one-eighth (1/8) of an inch, across
> the width of the threshold.  In all locations, the freezer floor is equal to or
> lower than the surface of the floor in the delicatessen department.  This
> variation in floor height does not conform to the plan which shows the
> floor at the same elevation on both sides of the door.
>
> 2.9 Slope of the Floor in the Delicatessen Department: The floor in the
> delicatessen department adjacent to the freezer threshold slopes
> downward toward the threshold at approximately one-sixteenth (1/16) of
> one inch vertical across nine (9) inches horizontal (1:144).  This
> downward slope exists on the northern half of the threshold.  No
> significant slope was measured elsewhere adjacent to the threshold.
>
> 3.1 Water infiltrated the subject door [because] the slope of the floor
> east of the threshold seal on the northern portion of the door opening.
> The elevation of the floor west of the threshold allows water which has
> infiltrated under the seal to flow onto the lower floor of the freezer and
> remain there until it freezes.
>
> 3.2 Construction of the concrete floor of the freezer and adjacent to the
> freezer does not conform to the drawings.

(Illo Report, Ex. C to Def. Cleveland's Br. in Supp. of Mot. in Limine (Doc. 91)).

Defendant Cleveland does not contend that Illo is unqualified.  Instead,

Defendant Cleveland insists that Illo's conclusion regarding the inconsistency of the

floor with the drawings is incorrect.  Defendant Cleveland cites to general contract

provisions between Cleveland Construction and Walmart.  (See Section 03300, Ex.

D to Def. Cleveland's Br. in Supp. of Mot. in Limine (Doc. 91)).  These contract

provisions make reference to American Cement Institute documents, which provide

that a 1/8 inch elevation differentials in floors are acceptable.  (See ACI 117-90, Ex.

E to Def. Cleveland's Br. in Supp. of Mot. in Limine (Doc. 91)).  Additionally,

Defendant Cleveland attacks the substance of Illo's testimony on the grounds that it

is not complete enough to be considered reliable.

Plaintiff does not contest that the deli freezer floor meets the requirements laid

out in general provisions found in the contract between Walmart and Cleveland

Construction.  (See Pl.'s Br. in Opp'n to Mot. in Limine (Doc. 115) at 6).  However,

Plaintiff contends that Illo's opinion is that the freezer area floor should not be sloped

as to direct water into the freezer, regardless of general contract requirements.

Plaintiff also highlights that Illo stated in his deposition that the floor area adjacent to

a wash-down zone should be given "special consideration" when it comes to

differentials in floor elevation.  (See Dep. of Robert J. Illo, Ex. B, Pl.'s Br. in Opp'n to

Mot. in Limine (Doc. 115) at113-114).

The court agrees that Illo's proposed testimony is not confined to the subject

matter of the contract language between Walmart and its contractors.  Illo is an

architect and engineer, and he conducted a visual inspection and taken physical

measurements of the deli freezer floor area.  Illo used the substance of his

measurements, which Defendant Cleveland does not contest as being unreliable, to

hypothesize that water will flow from the higher floor elevation to the lower floor

elevation.  This is not a remarkable opinion.  Given Illo's years of experience,

specialized knowledge, and training, the court finds this opinion to be reliable.

Therefore, Illo's opinion meets the requirements for an expert under Federal

9

Rule of Evidence 702 and the court will deny Defendant Cleveland's motion in limine.  Defendant Cleveland's attacks on Illo's opinions are more appropriately the subject of cross-examination than the basis to exclude Illo's opinion entirely.  The Supreme Court's statement in Daubert that "[vi]gorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" still rings true.  Daubert, 509 U.S. at 596.

### iii.  Defendant Cleveland's Challenge of Kenneth L. Fry

Defendant Cleveland seeks to exclude the testimony of Defendant Welbilt's proposed expert, Kenneth L. Fry, in its entirety.  (Def. Cleveland's Mot. in Limine (Doc.93)).  Defendant Cleveland contends that Fry does not qualify as an expert under Rule 702 because he does not have a college degree and because he lacks experience related to pouring concrete.

Defendant Welbilt counter that Fry has ample experience to qualify as an expert commercial refrigeration design.  Fry spent ten years as a refrigeration design consultant with Clive Samuels & Associates and has worked on many aspects of refrigeration design as the President of BD Engineering (See Dep. of Kenneth L. Fry, Ex. D, Def. Cleveland's Br. in Supp. of Mot. in Limine (Doc.94) at 15, 37).  Fry is a licensed Professional Engineer in Maryland and his Pennsylvania license is pending. (Id. at 10).

The court agrees with Defendant Welbilt and is satisfied that Fry is a qualified

expert under Rule 702.  Fry has years of experience in freezer design and installation, and this experience has allowed him to develop specialized knowledge. While Defendant Cleveland claims that Fry is not specialized to the degree necessary to qualify as a an expert witness, this court interprets that requirement liberally.  See Elcock v. Kmart Corp., 733 F.3d 734, 741 (3d Cir. 2000).  Fry possess far more knowledge and expertise on the subject of commercial refrigeration than the average layman.  Fry's experience sufficiently qualifies him to the proper levelness of the floor in which a commercial refrigerator sits.

Additionally, Defendant Cleveland seeks to preclude Fry's testimony in its entirety on the grounds that it is unreliable under Rule 702.  Defendant Cleveland attacks Fry's proposed testimony on the same grounds that it attacked Illo's opinion – namely that Fry's opinion does not reasonably flow from the methodology that he employed and the facts in issue.  Similar to Plaintiff's expert witness, Fry measured a 1/8 inch differential between the floor outside and inside of the deli freezer.  (See Fry Report, Ex. C, Def. Cleveland's Br. in Supp. of Mot. in Limine (Doc.94) at 2).  Fry hypothesizes in his report that this differential, along with the conduct of Walmart employees, contributed to the accumulation of ice.  (See id. at 5).  Fry also states, in one part of his twelve conclusions, that "[t]he floors were not installed per construction documents by Cleveland Construction."  (See id. at 5-6).  As mentioned above, the 1/8 inch differential measured by Fry is consistent with the construction contract between Walmart and Cleveland Construction.

Defendant Welbilt concedes that "Fry cannot be permitted to testify that the floor was not installed per the construction documents from Cleveland Construction." (Def. Welbilt's Br. in Opp'n to Mot. in Limine (Doc. 111) at 9). Defendant Welbilt nonetheless contends the conclusion about the floor was a small part of Fry's overall opinion, and that he should not be precluded entirely. Defendant Welbilt also contests the preclusion of Fry's testimony by pointing to documents that accompanied the installation of the freezer, requiring that "the installation area be level and clear of debris." Additionally, Defendant Welbilt notes that Fry conducted physical measurements, and the court notes that much of his report involves the freezer door.

The court agrees with Defendant Welbilt and will deny Defendant Cleveland's motion to exclude Fry's testimony in its entirety. Defendant Cleveland's attacks on the basis of Fry's opinion is more appropriately the subject of cross-examination than the basis to exclude Fry's opinion entirely. Fry conducted a detailed review of deposition of Walmart employees, visually inspected the freezer area, took measurements, and developed a hypothesis based on his years of experienced. The court is satisfied that Fry's opinion, albeit admittedly not perfect, is a reliable one that an expert in his field would provide.

### iv. Defendant Welbilt's Challenge of Robert Illo

Defendant Welbilt seeks to exclude the testimony of Plaintiff's proposed expert, Robert J. Illo, as it relates to the design of the freezer door. (Def. Welbilt's

12

Mot. in Limine (Doc. 98) at ¶ 45).  Defendant Welbilt contends that Illo does not qualify as an expert under Rule 702.  Specifically, Defendant Welbilt contends that Illo lacks the specialized knowledge to testify as an expert on the design of freezer doors because Illo has no product design experience.

Plaintiff responds that Illo is qualified as an expert under Rule 702 because of his professional degrees in architecture and engineering, years of experience on freezer projects, and his experience helping clients who, similar to Walmart, had freezers located next to wash down areas.  (See Dep. of Robert J. Illo, Ex. B, Pl's Br. in Opp'n to Mot. in Limine (Doc. 116) at 7-11).  While working on these projects, one of Illo's tasks included helping clients to select freezer doors, including threshold and seal arrangements.  (Id. at 7).

The court agrees with Plaintiff and is satisfied that Illo is a qualified expert under Rule 702.  Illo's years of experience as an engineer and consultant on freezer projects has helped him develop the specialized knowledge needed to provide a reasonably reliable opinion on what features are necessary to keep a freezer located next to a wash-down area safe.  Furthermore, much like Defendant Welbilt's own expert, Illo is not the most specialized expert imaginable; however, Illo contains far more knowledge than the average layman when it comes to freezer doors, seals, thresholds, and designs.

Defendant Welbilt also attack Illo's opinion on the grounds that it is unreliable and therefore impermissible under Rule 702.  Defendant Welbilt contends that Illo's

13

opinion is unreliable because he did not perform any tests on his theory.  Defendant

Welbilt also claims that Illo's opinion is impermissible because it is based on facts

Defendant Welbilt deems incorrect.  The facts Defendant Welbilt is concerned with

involve Illo's failure to identify the "cam hinges" located on the freezer door, and Illo's

failure to address the allegations by Ms. Henderson, who claims to have sprayed

water into the deli freezer before the accident.

Plaintiff responds to Defendant's attack of Illo's testimony by pointing out that

the facts at the heart of Defendant Welbilt's motion are contested.  Additionally,

Plaintiff contends that Illo's scientific theories were vindicated because of the

installation of the diamond plate, the type of adjustment to the threshold that Illo

recommended.

The court agrees with Plaintiff that Illo's opinions with regard to the freezer

door meets the standard for reliability under Rule 702.  Although tests assist in

determining the reliability of an expert's opinion, district courts are not required to

give greater weight to any one factor when assessing the reliability of an expert's

proposed testimony.  See Heller, 167 F.3d at 152.  The court notes that Illo

conducted an inspection of the freezer door and deli area.  (See Illo Report, Ex. A,

Pl's Br. in Opp'n to Mot. in Limine (Doc. 116) at 5-6).  Illo also reviewed Walmart

manuals, the deposition of Walmart employees (Id. at 3-4), and has experience as a

"trouble shooter" for a freezer near a wash down area that similarly had water

leakage problems.  (See Dep. of Robert J. Illo, Ex. B, Pl's Br. in Opp'n to Mot. in

14

Limine (Doc. 116) at 46-47).  Furthermore, Defendant Welbilt's own proposed

expert, Kenneth Fry, underwent a similar process in which he conducted a visual

inspection and reviewed other evidence prior to developing his opinion.

　　　With respect to Defendant Welbilt's claim that Illo based his opinion on

incorrect facts, the court notes that the facts raised by Defendant Welbilt are

disputed by Plaintiff.  A plain reading of Illo's deposition reveals that Defendant

Welbilt has a different definition of "cam hinges."  (See id. at 116-19).  Furthermore,

Plaintiff contends that Henderson's testimony is "questionable at best," and that both

Fry and Illo opined at their deposition that such spraying would not cause a puddling.

(See id. at 113; Dep. of Kenneth L. Fry, Ex. C, Pl's Br. in Opp'n to Mot. in Limine

(Doc. 116) at 73-75).  Therefore, the court finds that Illo's proposed expert testimony

is reliable, and that cross-examination is the most appropriate means to address the

questions raised by Defendant Welbilt.

　　　Finally, Defendant Welbilt contends that Illo's opinions with respect to the

freezer door are *ipse dixit*.  Defendant Welbilt alleges that too great of an analytical

gap exists between the data presented in the case and the opinion offered by Illo.

The court does not agree.  Illo and Fry, Defendant Welbilt's expert witness,

underwent the same process in developing their opinions.  Additionally, the court

notes that the diamond plate was subsequently installed on the freezer door to

strengthen the threshold seal, as Illo concluded would be necessary.  (See Illo

Report, Ex. A, Pl's Br. in Opp'n to Mot. in Limine (Doc. 116) at 6).  Thus, Defendant

15

Welbilt's motion in limine to limit a portion of Illo's testimony is denied.

**Conclusion**

For the reasons stated above, the court will grant the parties' motions in limine in part and deny them in part.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VELMA LAPLANT,** | : | **No. 3:06cv2246** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **WELBILT WALK-INS, LP t/a KYSOR** | : | |
| **PANEL SYSTEMS, PROFESSIONAL** | : | |
| **INSTALLATIONS, AND CLEVELAND** | : | |
| **CONSTRUCTION, INC.** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW**, to wit, this 14th day of September 2011, the parties' motions in limine are **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  Plaintiffs' motion in limine to permit evidence of the installation of a diamond plate to the threshold of the Millford, PA Walmart deli freezer door (Doc. 96) is **GRANTED** as unopposed;

2.  Defendant Cleveland Construction's motion in limine to preclude the testimony of Robert J. Illo in its entirety (Doc. 90) is hereby **DENIED**;

3.  Defendant Cleveland Construction's motion in limine to preclude the testimony of Kenneth L. Fry in its entirety (Doc. 93) is hereby **DENIED**; and

4.  Defendant Welbilt Walk-ins, LP t/a Kysor Panel Systems's motion in limine to preclude certain opinions of Robert J. Illo (Doc. 98) is hereby **DENIED**.

17

BY THE COURT:


s/ James M. Munley

JUDGE JAMES M. MUNLEY
United States District Court